**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHANNON POTTS,**

                         **Plaintiff,**

            **v.**

**CITY OF BINGHAMTON,**

                        **Defendant.**
_____

**3:21-cv-505**
**(GLS/ML)**

## <u>SUMMARY ORDER</u>

Plaintiff pro se Shannon Potts brings this action alleging claims of

disability discrimination and retaliation pursuant to the Americans with

Disabilities Act[1] (ADA), military service discrimination[2] pursuant to the

Uniformed Services Employment and Reemployment Rights Act[3]

(USERRA), and disability discrimination, military service discrimination,

and retaliation pursuant to New York State Human Rights Law[4] (NYSHRL)

_____

[1] *See* 42 U.S.C. §§ 12101-213.

[2] Although defendant City of Binghamton makes arguments that Potts' USERRA retaliation claim must be dismissed, (Dkt. No. 12, Attach. 6 at 20), the complaint does not appear to allege such a claim, (Compl. ¶¶ 60-64), and Potts confirms this in his response, (Dkt. No. 23, Attach. 1 at 11).

[3] *See* 38 U.S.C. §§ 4301-35.

[4] *See* N.Y. Exec. Law §§ 290-301.

against defendant City of Binghamton.  (Compl., Dkt. No. 1.)[5]  Pending is

Binghamton's motion to dismiss, (Dkt. No. 12), and Potts' cross-motion to

amend the complaint, (Dkt. No. 23).  For the reasons that follow, Potts'

motion is granted, and Binghamton's motion is granted in part and denied

in part.

Potts' cross-motion to amend is governed by Rule 15(a)(2) of the

Federal Rules of Civil Procedure, which requires that leave to amend be

"freely give[n] . . . when justice so requires."  Leave need not be granted

where a proposed amendment would be futile, which is the case "when it

could not withstand a motion to dismiss."  *F5 Capital v. Pappas*, 856 F.3d

61, 89 (2d Cir. 2017) (internal quotation marks and citation omitted).

Binghamton opposes amendment on three grounds: (1) that the court

should decline to grant leave "as a matter of discretion" until after it rules

on the pending motion to dismiss, (2) because Potts' affidavit and

---

[5]  Potts also purportedly asserts his cause of action for military
service discrimination pursuant to the Leave with Pay Law (LWPL), 5
U.S.C. § 6323.  (Compl. ¶¶ 60-64.)  Because a failure to comply with the
LWPL is treated as a violation of USERRA, and, given Potts' pro se
status, the court construes this claim as brought pursuant to USERRA.
*See Woodard v. N.Y. Health and Hosps. Corp.*, No. 04-CV-5297, 2010
WL 2735757, at *11 (E.D.N.Y. July 9, 2010) ("[A] USERRA violation exists
where a plaintiff is denied the full measure of leave due to them under [5
U.S.C. §] 6323." (internal quotation marks and citation omitted)).

memorandum "do not address what he is curing and make no attempt to state what amendments were made and for what purpose because," and (3) because amendment is futile.  (Dkt. No. 24, Attach. 1 at 8-9.)

Given Potts' pro se status, the technical non-compliance with Local Rule of Practice 15(a) is excused, and, because Potts has not had the opportunity to respond to Binghamton's futility arguments, the procedurally "mo[st] expedient" course is to grant the cross-motion to amend, and construe Binghamton's pending motion to dismiss as against the amended complaint.  *See Carpenter v. Mohawk Valley Cmty. Coll.*, No. 6:18-cv-1268, 2019 WL 3338845, at *1 (N.D.N.Y. July 25, 2019).

Turning to the motion to dismiss, consistent with the standard of review, the facts are drawn from Potts' amended complaint, (Am. Compl., Dkt. No. 23, Attach. 4), and presented in the light most favorable to him. At all times relevant to this action, Potts was either a member of the Air or Army National Guard.  (Am Compl. ¶. 8)  Potts began working at the Binghamton Fire Department in August 2003.  (*Id.* ¶ 7.)  In 2015, Potts was ranked first on the promotion list, but was "passed over . . . several times." (*Id.* ¶ 10.)  Also in 2015, Potts applied for paid leave to attend a three-month military training, which was required of him due his membership in

3

the National Guard.  (*Id.* ¶¶ 12-13.)  Potts was "warned" that he would be disciplined if he reported for the training, and was told that he "was setting himself up for further problems down the road and . . . a bad future" with the Fire Department.  (*Id.* ¶ 13 (internal quotation marks and alterations omitted).)  Potts ultimately reported for the training, and later returned to his employment with the Fire Department, where he was promoted to Lieutenant in 2017.  (*Id.* ¶¶ 11, 16.)

In 2018, Potts took leave from the Fire Department to attend to "a sensitive, personal family situation" and, upon his return from said leave, was encountered by Marco Michitti another member of the Fire Department, who addressed him by his first name and asked him "how was your hunger strike?"  (*Id.* ¶ 17.)  Potts perceived this as insubordination, as Michetti was a lower rank than him and addressed him by his first name, and was also concerned that the sensitive nature of his leave had been disclosed.  (*Id.* ¶ 18.)  Potts reported this incident to his superior, Captain Daniel Vail, and, in doing so, "used [the] military term, 'drawing down,'" which his co-workers overheard and perceived as a threat.  (*Id.* ¶¶ 19-20.) In connection with the incident with Michetti, Potts was asked to complete an "IDC report" and the Fire Department's Director of Personnel and

4

Safety, Patricia Keppler, and Chief, Daniel Eggleston, met with Potts and his union representative to discuss the incident.  (*Id.* ¶ 23.)  In the meeting, Potts explained that the term "drawing down" meant that he was suggesting Michetti be disciplined, and that it was not meant to convey a threat, however, Potts was ultimately suspended.  (*Id.* ¶¶ 23, 27-28.)  Potts was provided with a letter explaining that he was suspended for threatening a co-worker, and stating that, in order for him to return from suspension, he would have to undergo a psychological exam, as it was "incorrectly believed that [Potts] suffered from mental health issues because of his military service experiences."  (*Id.* ¶¶ 29, 33.)  Upon the "information and belief" of Potts, no other Fire Department member has been required to submit to such testing, other than as part of their initial hiring process or in connection with substance abuse allegations.  (*Id.* ¶ 32.)

Additionally, the Fire Department contacted the City of Binghamton Police Department in connection with the "drawing down" incident, and Keppler "falsely told the police investigator that" Potts had indicated to her that "drawing down" conveyed a threat by "extend[ing] one of his arms straight out and ma[king] a gun with his pointer finger and thumb."  (*Id.*

5

¶ 30 (emphasis omitted).)

Potts was examined by Dr. William Connor, a psychologist, who determined that Potts "did not make a threat . . . [,] could . . . return[] to work, but should obtain treatment to adjust to civilian life," recommending that he see a trauma specialist. (*Id.* ¶¶ 34-35, 37 (emphasis omitted).) Dr. Connor additionally recommenced that, upon Potts' return to the Fire Department, he be counseled by a superior officer "regarding the inappropriateness of his behavior and his role and responsibility in remediation going forward." (*Id.* ¶ 38 (emphasis omitted).) Dr. Connor submitted additional reports thereafter in which he recommended that Potts be returned to, at a minimum, light duty. (*Id.* ¶¶ 35-38, 41-43.) Potts signed an "Agreement in Lieu of Discipline," which referenced his "military trauma," however, the Fire Department did not allow Potts to return to work. (*Id.* ¶ 40.)

On May 31, 2019, Potts met with a representative of the Fire Department and provided them with a written statement, which was "willfully . . . t[a]k[en] out of context" and used as "another obstacle . . . [to] delay [Potts'] return to work." (*Id.* ¶ 44.) After the meeting, the Fire Department, presumably through some official thereof, "accused [Potts] . . .

6

of not understanding [the City's workplace violence] policy," and, even though there was never any action taken "to counsel [Potts] regarding [this] policy," nor was "Dr. Connor [allowed] to address the mater during the course of his efforts," Potts was informed that for this reason he would not be returned to duty.  (*Id.* ¶ 45 (emphasis omitted).)

On July 3, 2019, Chief Eggleston sent Potts a letter requesting a meeting and stated that if he was "not satisfied that [Potts] underst[oo]d why [his] conduct . . . was unacceptable, unbecoming of [his] position, and a violation of the City's workplace violence policy" that he would not be reinstated, and would be terminated or otherwise requested to resign.  (*Id.* ¶ 47.)  "In sworn court testimony," Keppler stated that Potts "would not have been returned to work" had he not attended the meeting with Chief Eggleston, regardless of Dr. Connor's opinion, because "it didn't matter what Dr. Connor's opinion was . . .  the issue was whether or not [Potts] understood the workplace violence policy."  (*Id.* ¶ 48 (internal quotation marks, alterations, and emphasis omitted).)

Potts ultimately returned from his suspension on July 30, 2019, but on Novemeber 20, 2019, was "accused . . . of failing a periodic physical" and was "placed . . . on light (modified) duty."  (*Id.* ¶¶ 49-50.)  Potts then

had another physical examination by a separate examiner, Dr. Teng, who "became confrontational with" him, indicated that she did not think he was fit to return to work, despite the fact that he provided documentation from his physician that indicated he was, and "made at least one inflammatory and discriminatory nonmedical statement." (*Id.* ¶¶ 51-52, 56.)  Upon the "information and belief" of Potts, Teng had been advised by the Fire Department "that [Potts] was a member of the military and posed a potential physical danger to others." (*Id.* ¶¶ 51, 57.)

After filing a grievance with his union, Potts was medically cleared to return to full-duty work on April 25, 2021.  (*Id.* ¶¶ 63-64.)  During his time with the Fire Department, Potts "never received any formal negative evaluation." (*Id.* ¶ 65.)  Potts filed a complaint with the New York State Division of Human Rights (NYSDHR) on December 20, 2019, which was subsequently transferred to the United States Equal Employment Opportunity Commission (EEOC).  (*Id.* ¶ 4.)  Potts received a right to sue notice, dated September 24, 2020, from the EEOC on February 3, 2021. (*Id.*)

The standard of review under Fed. R. Civ. P. 12(b)(6)[6] is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

Binghamton argues that Potts' ADA claims are time-barred because Potts presumably received his right to sue letter on September 28, 2020, and did not file his complaint until over ninety days later, on April 30, 2021. (Dkt. No. 12, Attach. 6 at 6-10.)[7]  Potts counters that he did not actually receive his right to sue letter until February 3, 2021, and, thus, his filing

_____

[6] Although Binghamton seeks dismissal pursuant to both Rules 12(b)(6) and 12(b)(1), the motion is considered pursuant to Rule 12(b)(6). *See Dubreus v. North Shore Univ. Hosp.*, No. 12 CV 940, 2012 WL 5879110, at *1 n.1 (E.D.N.Y. Nov. 2012) ("Although defendants move to dismiss pursuant [to] Rules 12(b)(1) and 12(b)(6) for plaintiff's alleged failure to commence this action within ninety days of receiving the [r]ight to [s]ue letter, it is well-settled that compliance with the [ninety]-day period . . . is not jurisdictional." (internal quotation marks and citation omitted)).

[7] Binghamton also contends that any ADA claims related to conduct that postdates Potts' EEOC filing must be dismissed as unexhausted, (Dkt. No. 12, Attach. 6 at 1-14), however, Potts responds that his claims are not based on any such conduct, (Dkt. No. 23, Attach. 1 at 5-6).

satisfied the ninety-day requirement.  (Dkt. No. 23, Attach. 1 at 4; *see* Am. Compl. ¶ 4.)

To be timely, claims under the ADA must be filed within ninety days of the "claimant's receipt of a right-to-sue letter from the EEOC."  *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (citations omitted).  It is presumed that a right-to-sue letter is mailed on the date shown on the notice, and "received three days after its mailing."  *Id.* However, this "initial presumption is not dispositive" where a plaintiff "presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach [him] by mail," *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996), which may be considered at the motion to dismiss stage,  *see Pogorzelski v. Cmty Care Physicians, PC*, No. 6:16-cv-498, 2018 WL 1626524, at *2 (N.D.N.Y. Mar. 30, 2018); *see also Comrie v. Bronx Lebanon Hosp.*, No. 97-7484, 1998 WL 29643, at *2 (2d Cir. Jan. 27, 1998).

Here, Potts has submitted evidence to rebut the initial presumption that he received the right to sue letter on September 28, 2020, three days after its mailing.  Potts attached to his amended complaint a sworn

10

declaration by his former attorney, Lawrence Ordway, Jr., who was designated to receive the right to sue letter on behalf of Potts.  (Dkt. No. 23, Attach. 5)  Ordway declares that he "never . . . received [the right to sue letter] from the EEOC."  (*Id.* ¶ 4.)  Additionally, Potts submitted his own affidavit stating that he did not receive the right to sue letter until February 3, 2021, when he received it via email after reaching out to the EEOC.  (Dkt. No. 23, Attach. 2 at 4; *see* Dkt. No. 23, Attach. 7.)  Accordingly, the presumption that Potts received the right to sue letter on September 28, 2020, and, thus, that his filing was untimely, is rebutted.  *See Froehlich v. Holiday Org., Inc.*, No. 11 CV 2977, 2012 WL 4483006, at *4 (E.D.N.Y. Sept. 27, 2012).  Accordingly, Binghamton's motion to dismiss on timeliness grounds is denied with respect to Potts' ADA claims.

Binghamton seeks dismissal of Potts' USERRA[8] and NYSHRL military discrimination claims because Potts has pleaded no facts demonstrating that his military service was a substantial or motivating

_____

[8] While Binghamton seeks dismissal of Potts' USERRA claim for failure to comply with the statute of limitations, (Dkt. No. 24, Attach. 1 at 4), based on Potts' own argument that USERRA claims have a four-year statute of limitations, (Dkt. No. 23, Attach. 1 at 6), this is incorrect.  *See Mock v. City of Rome*, 851 F. Supp. 2d 428, 436 (N.D.N.Y. 2012) ("There is no statute of limitations for USERRA claims." (citing 38 U.S.C. § 4327(b))).

factor in any alleged adverse action he suffered.  (Dkt. No. 12, Attach. 6 at 16-19, 21.)  Potts counters that "[Binghamton's] mindset was, unfortunately, reflective of an inaccurate belief among the nation's general public that military veterans are more likely to suffer from mental health conditions . . . and that those perceived mental health issues make veterans more prone to violence."  (Dkt. No. 23, Attach. 1 at 8.)

Discrimination claims under USERRA are evaluated under a two-step burden shifting analysis, *see Kassal v. City of Middletown*, 272 F. Supp. 3d 516, 529-30 (S.D.N.Y. 2017), while claims of military discrimination under NYSHRL are evaluated under the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorman v. Covidien*, LLC, 146 F. Supp. 3d 509 (S.D.N.Y. 2015).  To satisfy the first step of the USERRA analysis "a plaintiff must plead facts upon which it could plausibly be inferred that his military service . . . was a substantial or motivating factor in the adverse employment action taken against him."  *Zeltman v. Infinigy Solutions, LLC,* No. 1:20-CV-0571, 2021 WL 2076214, at *3 (N.D.N.Y. May 24, 2021) (quoting *Hunt v. Klein*, 476 F. App'x 889, 891 (2d Cir. 2012) (internal quotation marks omitted); *see McDuffie v. Eli Lilly & Co.*, No. 04 Civ. 05995, 2009 WL 857069, at *8

(S.D.N.Y. Mar. 31, 2009) ("The term 'motivating factor' means that, if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, one of those reasons would be the employee's military position or related obligations." (citation omitted)).  To satisfy the first step of the NYSHRL analysis a plaintiff must allege facts demonstrating that "the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Gorman*, 146 F. Supp. 3d at 523.

Here, Potts has not pleaded facts sufficient to meet the standard for establishing a prima facie case under either the USERRA or NYSHRL standard.  While Potts contends that he was met with some resistence from the Fire Department in 2015 regarding his leave to conduct military training, his amended complaint notes that he was allowed to attend the training, return to his employment with the Fire Department, and was, in fact, subsequently promoted.  (Am. Compl. ¶¶ 11-13, 16.)  Additionally, the amended complaint does not allege that he was suspended, or deemed medically unfit, because of his military status, beyond conclusory allegations of anti-military animus.  (*See, e.g.*, Am. Compl. ¶ 46 ("[The Fire Department]'s overall position was that it would not allow [Potts] to return

to work because he had not been counseled on city policy, but that he would also only be counseled on city policy after he was returned to work. This is a further notable example of discrimination based on military service.").)

To the extent Potts argues that the Fire Department harbored some "inaccurate belief . . . that military veterans are more likely to suffer from mental health conditions . . . and that those perceived mental health issues make veterans more prone to violence," (Dkt. No. 23, Attach. 1 at 8), the conclusory allegations he has alleged in his complaint cannot support such a position.  (Am. Compl. ¶ 33 ( "[The Fire Department] incorrectly believed that [Potts] suffered from mental health issues because of his military service experiences"); *id.* ¶ 40 (noting that Potts' Agreement-in-Lieu-of-Discipline, "referenced 'military trauma,'" (emphasis omitted)), *id.* ¶ 51 (alleging that "upon information and belief" the Fire Department advised Dr. Teng that Potts "was a member of the military and posed a potential physical danger to others")[9]; *see Donley v. Vill. of Yorkville*, No. 6:14-CV-

---

[9]  Potts also alleges that "Dr. Teng . . . made at least one inflammatory and discriminatory nonmedical statement," (Am. Compl. ¶ 52), however, Potts does not allege what the comment was or even if it was allegedly "discriminatory" based on his military status.

1324, 2019 WL 3817054, at *7 (N.D.N.Y. Aug. 13, 2019) (finding that, where "[p]laintiff . . . offered only the conclusory allegation that [d]efendants perceived him 'as having a mental disability because of his military service,'" such allegations were insufficient to sustain a USERRA claim (citation omitted)).  Accordingly, Potts' USERRA discrimination claim is dismissed.

Regarding Potts' retaliation claims under NYSHRL, Binghamton seeks dismissal on the grounds that Potts fails to demonstrate a sufficient causal connection between any protected activity and alleged adverse employment action.  (Dkt. No. 12, Attach. 6 at 20, 22.)  Potts argues that he engaged in protected activity by filing his EEOC complaint and Binghamton "thereafter continued to engage in a pattern of adverse action and hostility against him," and required him, in July 2020, "to provide broad medical releases."  (Dkt. No. 23, Attach 1 at 14-16.)

"Retaliation claims under . . . [NYSHRL] are analyzed under the same 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas.*"  *Apionishev v. Columbia Univ. in N.Y.*, No. 04 Civ. 6471, 2012 WL 208998, at *7 (S.D.N.Y. Jan. 23, 2012) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.2010)).

15

To establish a prima facie case of retaliation under the NYSHRL, a plaintiff "must show that (1) []he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361-62 (S.D.N.Y. Aug. 16, 2012) (citation omitted). Among other ways, a plaintiff may demonstrate a causal connection "by showing that the protected activity was followed closely by discriminatory treatment." *See id.* at 364 (citation omitted). "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Kraiem v. JonesTrading Inst. Servs.*, No. 1:19-cv-05160, 2021 WL 5294066, at *5 (S.D.N.Y. Nov. 12, 2021) (citations omitted).

Here, the temporal proximity is too attenuated to support a retaliation claim. Potts engaged in protected activity in December 2019 when he filed his EEOC claim.[10] (Am. Compl. ¶ 60); *see Bowen-Hooks v. City of New*

---

[10] Potts appears to argue that filing an EEOC complaint was the only recognizable form of NYSHRL protected action he engaged in, (Dkt. No. 23, Attach 1 at 14-16), and, given Potts' pro se status, the court has

16

*York*, 13 F. Supp. 3d 179, 229 (E.D.N.Y. 2014) (noting that "fil[iing] an EEOC charge" constituted "protected activity").  Assuming without deciding that Binghamton's instruction that Potts "provide broad medical releases" in July 2020, (Dkt. No. 23, Attach 1 at 14-16; *see* Am. Compl. 61), constitutes an adverse action, the seven month gap between his EEOC filing and the instruction is too attenuated to establish causation.  *See Kraiem*, 2021 WL 5294066, at *5.  Additionally, Potts' argument that he was placed on light duty *prior* to his EEOC filing, and was forced to remain on light duty after the filing, (Dkt. No. 23, Attach 1 at 14-16), cannot serve as a basis of causation.  *See Bryant v. Greater New Haven Transit Dist.*, 8 F. Supp. 3d 115, 133 (D. Conn. 2014) ("[T]emporal proximity between an employee's protected activity and a subsequent adverse employment action will not support an inference of a causal connection where the employer had already begun taking adverse employment actions against the employee prior to the employee's engagement in any protected activity.") Accordingly, because Potts cannot establish a causal connection between his protected activity and any allegedly adverse employment action, his NYSHRL retaliation claim is dismissed.

———————————

thoroughly reviewed his complaint, and concurs.

17

Regarding Potts' USERRA claim stemming from the Fire Department's alleged failure to comply with the LWPL, Binghamton argues that Potts has failed to establish his claim because he "does not allege he was denied or short-changed any military leave with pay" nor that his "military leave was ever actually denied to him; instead, he pleads it was granted."  (Dkt. No. 12, Attach. 6 at 23.)  Potts responds with one sentence, arguing that "notwithstanding he did serve in the military training duty and returned to work thereafter, [he was] denied his application for paid leave for that training."  (Dkt. No. 23, Attach. 1 at 6.)

"The [LWPL] provides that employees are entitled to [fifteen] days of leave, without loss in pay, per fiscal year to perform Reserve duty."  *Dew v. U.S.*, No. 97 CIV. 6409, 1998 WL 159060, at *6 (S.D.N.Y. Apr. 1, 1998) (citing 38 U.S.C. § 6323).  A USERRA violation exists where a plaintiff is denied "the full measure of leave due to them under" the LWPL.  *See Woodard v. N.Y. Health & Hosps. Corp.*, No. 04-CV-5297, 2010 WL 2735757, at *11 (E.D.N.Y. July 9, 2010) (quoting *Butterbaugh v. Dept.of Justice*, 336 F.3d 1332, 1336 (Fed. Cir. 2003).

While Potts alleges that the Fire Department "denied [his] application" for leave to attend his military training, he also alleges that,

18

after he "submitted . . . a written complaint to [the Fire Department stating] that [its] refusal to allow him military training leave violated his rights," he "did serve in the military training duty . . . [,] returned to work," and was subsequently promoted.  (Am. Compl. ¶¶ 11, 13, 15, 16.)  Accordingly, because Potts' amended complaint does not allege what, if any, violation of the Leave with Pay Law occurred, this cause of action is dismissed.

Finally, Binghamton's only argument with respect to Potts' NYSHRL disability discrimination claim is that the court should decline to exercise jurisdiction over it after dismissing Potts' federal causes of action.  (Dkt. No. 12, Attach. 6 at 23-25.)  Because Potts' ADA claims remain, the motion is denied with respect to this claim.

While "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once," *see Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014), here, Potts has already been granted leave "after [Binghamton] filed [its] initial motion to dismiss detailing perceived shortcomings in [Potts'] claims," *see Ulrich v. Moody's Corp.*, No. 13-CV-00008, 2014 WL 4977562, at *18 (S.D.N.Y. Sept. 30, 2014).  Accordingly, the claims in his complaint that are dismissed are done so with prejudice. *See Ulrich*, 2014 WL 4977562, at *18 ("[Pro se p]laintiff's failure to fix the

defects with his claims, after being provided with notice of them, is sufficient ground to deny" pro se plaintiff's request of "leave to amend any [dismissed] portions of the" amended complaint).

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Potts' cross-motion to amend (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that the Clerk shall file the Proposed Amended Complaint (Dkt. No. 23, Attach. 4), together with the supporting Exhibits (Dkt. No. 23, Attach. 5; Dkt. No. 23, Attach. 6; Dkt. No. 23, Attach. 7; Dkt. No. 23, Attach. 8), as the Amended Complaint in this action; and it is further

**ORDERED** that Binghamton's motion to dismiss (Dkt. No. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to Potts' claims for military service discrimination pursuant to USERRA and NYSHRL, retaliation pursuant to NYSHRL, and non-compliance with the LWPL, brought pursuant to USERRA, and

> **DENIED** as to Potts' claims for disability discrimination and retaliation pursuant to the ADA, and disability discrimination

20

pursuant to NYSHRL, which remain; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Miroslav

Lovric to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to

the parties.

**IT IS SO ORDERED.**

September 23, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge